May it please the Court, Your Honor. Deputy Federal Public Defender Michael Parente on behalf of the petitioner Armando Mena. Clearly established federal law requires that for a guilty plea to be knowing, voluntary, and intelligent, the record must affirmatively show that the defendant has been explained the elements of the offense. Here, the magistrate judge correctly found that the record of Mena's plea did not affirmatively show that he was explained the elements of the offense, but erred in concluding that the state court could reasonably presume that those elements had been explained off the record. First, the state court could not have presumed, properly presumed, that Mena was explained the elements of the offense because Mena presented this claim. It was denied on the face of the petition. And at that stage, California has told us, and this was also affirmed in the pinholster case, that it's reviewing the petitioner's factual allegations as true. And so the court could not have presumed the opposite of the factual allegation in Mena's petition, which is that he was never explained the elements of the offense. And I'm not aware of any context where there's a presumption in the law that is presumed against the petitioner at the petition stage, and this is something that's also explained by this court in Godoy v. Spearman a little bit further, that where there's a presumption, the party that benefits from that, the other party, in this case Mena, has an opportunity to present contrary evidence to overcome that presumption. And in California, the opportunity to do that is not at the petition stage. So the California Supreme Court, and this was the only basis on which the magistrate judge affirmed or found this case was denied under D-1, and so the only basis for denying Mena relief was upholding this presumption of the California courts, but that presumption did not apply here. Now, even if we assume that Mena had to overcome some kind of Henderson. But Henderson is the main case, right? Henderson is the main. Doesn't Henderson have a presumption in it? Henderson does have what I would say is dicta about a presumption. I think because it's so important, I think we can look at the actual language from Henderson. It says on page 647, it may be appropriate, not it is appropriate or that it's always appropriate, but it may be appropriate to presume that in most cases, not all cases, in most cases defense counsel routinely explain the nature. So if you go back to the plea colloquy at the state court when I believe they were about to conduct and he decides he's not going to go. They were going to bring in motions of limine if I remember correctly. They had actually done motions of limine and they had gone through one full day of jury selection. They came back the next day. And they came back the next day. The jury wasn't sworn yet. I believe there was some further jury selection to go. And when I read the transcript, if you look at the transcript of what happened when he decided to plead guilty, the trial court judge, the superior court judge did not, he himself, explain each of the elements of forcible, what was it? 288B1, a forcible lewd act.  Yes. But Mr. Maina filled out a plea form. Yes. And the judge asks him and he asks the lawyer as well, did you go over the form? Do you have a chance to discuss all of this with your lawyer? Yes. Right? And he says yes. Yes. And the plea form in this case is not like all plea forms because it does not explain the elements of offense. It does not even have a place. It's not like a federal form. This is what you see in state court. Not always, Your Honor. Some of this goes back when, how far back does this go? I don't believe it's in the record how far back this particular plea form out of San Bernardino County goes. But there are some plea forms that at least have an affirmation. You were explained the elements of the offense by your attorney. Maybe it doesn't explain the elements on the form. I understand that because that's going to vary crime by crime. But there's at least an affirmation for the person to initial. Yes, I was explained the elements of the offense by my attorney. This form doesn't have that. It's the state's form. They're responsible for the omissions in their form. They relied on this form and they admit that this particular form doesn't have any representation that counsel explained the elements of the offense. And they say, well, that's counsel's responsibility. But here the second error happened, which is that the attorney did not represent on the record. What was the difference between the two charges? Well, there's an additional element of force, substantially greater than the force required under what Mena was originally charged under, which was Section 288A, which is just basically a lewd touching. Sexual intent is required there and a touching. But the force is far more reprehensible conduct. Under 288B1, it has to be a substantially greater force. And the magistrate judge expressly found that this was, in fact, a critical element of the offense. And the respondent has waived that issue here. They've abandoned it on this appeal. They have not argued on appeal that that was not a critical element of the offense, although they did argue it in the district court. They've abandoned it here on appeal. Is that why you say it's objectively unreasonable to conclude that Mena understood the forcible lewd offense involved the use of force because it's the degree of the force you're saying? It's an entirely separate element of the offense. You cannot be convicted under 288B1 unless you're also admitting to this additional level of force, and it's different than anything that Mena had previously been charged with. In fact, there were two informations filed in this case. The first two informations only included California Penal Code Section 288A, the lesser offense. So Mena was never even provided anything that he could have read, like a charging document, explaining this offense. It all had to happen on the record, and in this case the record doesn't show that. And this court in Sober v. Christ applied clearly established federal law, the case that we rely on here in Henderson. And it said at page 18, I think this is important, if the record shows no explanation of the charge to petitioner and the state contends he received one in private but he denies it and the state cannot prove it was given, a hearing must be held. So this is circuit precedent interpreting clearly established federal law and saying when there's an allegation and the state has not proved that allegation to be false because the record itself does not explain the elements, a hearing must be held. There was no further evidentiary hearing or even an order to show cause by the state court and there's been no hearing yet in federal court and that's exactly what Mena is entitled to when this clearly established federal law is applied to his case. Now even if the court assumes that Mena had some burden of meeting the Henderson presumption at the prima facie stage, which I contend he did not, but if he did, the question is whether he has produced enough evidence to show that this is not one of those routine or most cases. And there are at least nine points of irregularity in this plea process. First, there were errors in the plea form. Those were misstated five times. I'm not counting them five and getting to nine. But it's misstated five times on the plea form. That error was independently repeated by the trial court when uncorrected by counsel during the colloquy. That wasn't the sentencing range? Yeah, exactly. The sentencing range is the each count. How did that matter? Well, Your Honor, it matters because it shows an irregularity in this proceeding. So the contention is not that the misstatement on the form itself constitutes a constitutional violation. But in terms of looking as to whether was this a normal proceeding under Henderson that we can presume everything just went as usual or was this an irregular proceeding, the fact that there's a Surely irregular given defense counsel's affirmative statement that he opposed the deal. So no question it's out of the ordinary, but I'm not sure how that really speaks to the question that we have to answer, which was what's the likelihood that your client did not understand, was not told what it was he was pleading guilty to? And I think that that fact goes to that, as well as the disagreement with counsel. Because when you have an irregular proceeding, it's almost like a Marsden situation in some sense. You have the attorney wanting to do one thing, the client wanting to do another, and those are the type of situations where when you add speed to that, because the timing of this was extremely fast, it just happened that morning, where we can say, you know, this wasn't a routine case. We can't know that he was explaining the elements. We can't assume that he was explaining the elements off the record. We do know that he wasn't explaining the elements on the record, and that's the constitutional protection at issue here. That's what he's entitled to. The record must show that he was explaining the elements of the offense. Another fact that is Do you think it would have made a difference? Your Honor, I do think it would have made a difference. The lawyer says that Manny didn't want to go to trial because he didn't want to subject the young girls to the trial process. I do think it would have made a difference, but I also contend that as a matter of law, that that's not a requirement that we have to show, and I think that's shown by footnote 12 of the Henderson opinion on page 6. Do you think this is structural error? I do, and also I think the Supreme Court recently has said there's very few instances that are structural. There are, but You go to Breck for a prejudice analysis. There are. I think Henderson actually establishes that this is structural because in footnote 12 they acknowledge they're assuming that the petitioner in Henderson would have pled guilty even if he had been advised of the intent element. They make that assumption as part of the majority opinion in footnote 12, page 644, and also a respondent here has waived harmless error. We've been litigating this case since 2013. They have never asserted Brecht as to claim one, so they've never asserted harmlessness of any error as to the voluntariness of Maina's plea. They have only alleged a lack of prejudice as to Strickland. What's your strongest case that would establish your right to a hearing in federal court? Well, in this circuit, of course, Sober, which is interpreting Henderson, so this court's precedent in Sober applied Henderson and held that the petitioner must have a hearing, and that's the strongest precedent requiring a hearing here. I'll let you go over your time, and I'll give you some time. Thank you. Good morning, Your Honors, and may it please the Court, California Deputy Attorney General Daniel Hilton for respondent. Maina adamantly insisted on taking a plea deal in this case, and then he got buyer's remorse and wanted to back out. And if we look at his claim distilled into one sentence here, it's that his pleas were not knowing, intelligent, and voluntary because he didn't understand that forcible lewd acts involve force. But the record contradicts his claim. And so the beginning of the analysis here has to start with Henderson's presumption. I think Henderson is the most important case because it's the established United States Supreme Court authority, and Henderson says that there's a presumption that we have to take into account, that counsel explains the elements off of the record. I don't believe that's dicta because it's setting the analytical framework for how these exact sorts of claims should be litigated when there's a federal habeas matter that's considered by the court. And, of course, Henderson's presumption doesn't exist in isolation, but it exists in the general framework of Strickland's presumption that attorneys are presumed to perform competently. And so there's three main areas that support, with strong circumstantial evidence, the idea that Maina did know that force was an element here. We have counsel's statements, we have the plea form itself, and we have Maina's statements at the plea hearing. So first, counsel's statements on the record. Counsel begins when the court asks, does your client want to waive arraignment? Counsel says, well, I don't know if I want to do that, but that's what my client wants to do. So it's clear that they've discussed these charges and they've filled out the plea form together, and the only difference between the original charges and the new charges is the element of force. It's the only difference. All the other elements are identical. And so it's unreasonable to presume that there was a discussion about these charges that didn't include the only difference between the two set of charges. And second, we move to the plea form, which was, of course, initialed and signed under penalty of perjury. And in the plea form, we have a description of each count as a forcible lewd act, and we have Maina's initials next to those descriptions. We have him initialing next to a box saying that his attorney explained everything to him and that they discussed it. There's also initials next to a box saying that they discussed more serious charges, and there's no way for them to discuss more serious charges without discussing what the current charges actually are. Also, I think this is important. There's a box that says violent or serious felony, and it's underlined and arrowed the word violent. So that, again, gives Maina notice that he's being charged with a violent crime, and he initialed near that box. And then, of course, we have counsel printing his name at the end. Maina makes much of the fact that his attorney didn't sign the plea form, but it's not because his attorney wasn't paying attention to this case or didn't show up to the plea hearing. It's because he was doing his absolute best to keep Maina from taking the plea deal, and Maina was insisting on taking it. And we know even the reason why he was insisting on taking it, because he had done these horrible things. He didn't want to bring the victims in to have to re-litigate and have them testify against him. So the plea form is strong evidence. And then we look to Maina's statements and his own statements, where he said that he read and discussed the form with his attorney. He said that he understood all the legal rights and consequences, for there's no way that he could understand the legal rights and consequences if he didn't even know what crime he was being charged with. And then it's unsurprising that based on all of these facts, we have the court making a factual finding that based on the evidence, Maina understood the nature of the charges. And based on all that evidence, when we have Henderson's presumption, it's clear that this is one of the many cases that Henderson was talking about that fall into that rubric of cases where we can presume that counsel did, in fact, explain. And it goes on to say that Henderson was a unique case, and it uses that word. It was unique in that there was an evidentiary hearing where it was established that there was—the attorney said, I never explained those facts. Here we don't have that. We don't have a declaration from counsel. We don't have a declaration even from Maina himself saying that he didn't understand what he was charged with. I think that's a— Why don't we have a factual record on those questions? Because Maina hasn't provided his own declaration or a declaration from counsel. What I'm hearing, what I thought I heard from the defense, is that's something that's going to happen at a subsequent stage, and he didn't have that opportunity. Yes, Your Honor, but Maina at least could have made the bare showing of a declaration from himself, which there's absolutely no prohibition on submitting his own declaration in state court. And our position is that Maina actually did— there was an actual evidentiary hearing, which was the plea hearing, where Maina was allowed to make statements under oath. Evidence was submitted in the form of a plea form. The attorney was asked questions, and the court made a factual finding. So we contend that Maina actually did have an evidentiary hearing in state court where evidence was submitted. And based on that evidence, it can't be said that the California Supreme Court's ruling on this matter was objectively unreasonable. And so if this court has no further questions on this issue or on any of the other two issues, the ineffective assistance of counsel issues— On the—how was it an objectively reasonable choice for Maina's appellate counsel not to raise an issue on appeal, even though the trial court issued a certificate of probable cause? Yes, Your Honor, I did make that argument in the brief, but I think even if—assuming that he should have raised any arguments, the court of appeal, the California court of appeal, conducted an independent review of the record, and they explicitly stated in their opinion that there was, quote, no arguable issues. And so if the court that was—that reviewed—conducted an independent review found no arguable issues, it absolutely could not have been prejudicial not to raise those issues. And additionally, it couldn't have been deficient performance to failing—for failing to raise an issue that wasn't even considered arguable by the court that would have reviewed it. If there are no further questions, respondents, prepare to submit. Thank you, Your Honor. Your Honor, just to clarify the issue about the absence of a declaration from counsel, I did submit a declaration when I prepared the petition to the California Supreme Court explaining my efforts to obtain those declarations. I was unable to. I need discovery power in order to effectively get information from appellate counsel or from Maina's trial counsel in this case. How about from Mr. Maina? Well, from Mr. Maina, there isn't a declaration from him directly, but, of course, these allegations are up and down throughout his petition, and all of those allegations were accepted as true based on the rules that the California Supreme Court follows. So it would have made absolutely no difference for Maina to simply repeat those allegations in a declaration of some kind. Of course, at an evidentiary hearing, he can be subjected to cross-examination, and we can have his testimony in court. One other point. Respondent said that on the plea form, Maina admitted that he had discussed more serious charges. That's in paragraph 9. He did not actually admit that he discussed more serious charges. He said that he had discussed with his attorney the possibility that he could be convicted of other or more serious charges, and those, of course, are referring to the lesser charges under 288A where he had 11 counts. Okay. Thank you. Thank you, counsel. Thank you for your argument. The matter is submitted.
judges: Paez, Clifton, Katzmann